**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| ALYSE SANCHEZ<br>10225 Frederick Ave., Apt. 514<br>Kensington, MD 20895<br>Montgomery County<br><br>and<br><br>ELMER ONAN SANCHEZ HERNANDEZ<br>10225 Frederick Ave., Apt. 514<br>Kensington, MD 20895<br>Montgomery County<br><br>     Plaintiffs-Petitioners,<br><br>    v.<br><br>KEVIN MCALEENAN, Acting Secretary,<br>Department of Homeland Security<br>Secretary of Homeland Security<br>Washington, D.C. 20528<br><br>and<br><br>MATTHEW ALBENCE, Acting Director,<br>Immigration and Customs Enforcement<br>500 12th St., SW<br>Washington, D.C. 20536<br><br>and<br><br>DIANNE WITTE, Director,<br>Maryland Field Office of ICE<br>Enforcement and Removal Operations<br>31 Hopkins Plaza 7th Floor<br>Baltimore, MD 21201<br>Baltimore City<br><br>    Defendants-Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:19-cv-1728 |

**<u>COMPLAINT AND PETITION FOR WRIT OF HABEAS CORPUS</u>**

**INTRODUCTION**

1.      This case challenges a policy or practice by immigration officials of unlawfully separating families by detaining and deporting noncitizens who, pursuant to federal statutes and regulations, have properly applied to obtain legal status by virtue of their lawful marriage to American citizens.

2.      In 2013, the federal government enacted regulations allowing noncitizens not legally present to remain in the United States while they seek legal status arising from their valid marriages with US citizens.  In 2016, the government expanded those rules to allow noncitizens with removal orders to remain in the country during the application process.  Both of these changes were intended to promote family unity and to avoid the grievous consequences of forcing a spouse or parent to leave the United States for years to pursue lawful immigration status from their country of origin while their US citizen families remained in this country.  The series of administrative steps required to complete the process created by the regulations is known as the provisional waiver program.

3.      Plaintiffs-Petitioners' claims arise from the unlawful practice of the Department of Homeland Security (DHS), which is using the provisional waiver program as a lure to arrest, detain, and remove immigrants from this country, and to prevent them from completing the provisional waiver process.  When citizens and their noncitizen spouses appear at a federal immigration office in Baltimore, Maryland for a scheduled interview meant to demonstrate the bona fides of their marriage and family life, Immigration and Customs Enforcement (ICE) agents have arrested, detained or sought to remove the noncitizen spouse, simply because that spouse is subject to a final order of removal.

4.      DHS thus defeats the "stateside" provisional waiver process's express purpose,

which is to protect United States citizens and their spouses from the extended and potentially indefinite family separation that would occur if the non-citizen spouses had to leave the U.S. for the duration of their efforts to regularize their immigration status.  DHS has deliberately ignored regulations specifically designed to protect family-unity and has cruelly twisted those regulations, using them as an unlawful bait-and-switch to deceive the very people the regulations were designed to protect.  Law-abiding noncitizens and their US citizen families are being lured to expend significant time, money, and effort to apply for support under these family-unity regulations, which DHS has no intention of honoring.

5.      As this Court has previously recognized, "Defendants have taken a rule that was promulgated for one purpose and used it for the opposite purpose," and in doing so, have rendered the provisional waiver program a nullity.  In addition to being a violation of the Administrative Procedure Act, as found by this Court, the policy is unlawful under the due process guarantee of the U.S. Constitution, the Immigration and Nationality Act and its regulations.

6.      Plaintiffs-Petitioners Alyse Sanchez and Elmer Onan Sanchez Hernandez are a married couple—Alyse is a U.S. citizen and Elmer is a noncitizen with a final order of removal— whose lives have been unlawfully and unconstitutionally upended by this cruel and deceitful practice.

7.      Upon information and belief, many other American citizens — both in Maryland and elsewhere — have also had their noncitizen spouses suddenly taken from them under this practice.  Many others have been scared away from seeking legalization of their immigration status by virtue of their marriage to an American citizen  out of fear that they will be detained and deported if they do.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under Art. I, § 9, cl. 2 of the United States Constitution (Suspension Clause); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 2201 (Declaratory Judgment Act); 28 U.S.C. § 2241 (habeas corpus), and 28 U.S.C. § 1361 (federal employee mandamus action).

9.      Venue is proper in the District of Maryland under 28 U.S.C. § 1391(c)(1) because Plaintiffs-Petitioners Ms. Sanchez and Mr. Sanchez Hernandez are domiciled in Kensington, Maryland, which is in Montgomery County.

## PARTIES

10.      Plaintiff-Petitioner Alyse Sanchez is a U.S. citizen, who lives at 10225 Frederick Ave Apt 514, Kensington, Maryland.  She is the wife of Plaintiff-Petitioner Elmer Onan Sanchez Hernandez.

11.      Plaintiff-Petitioner Elmer Onan Sanchez Hernandez is a citizen of Honduras who resides at 10225 Frederick Ave Apt 514, Kensington, Maryland.  He was arrested by ICE-ERO officers in Baltimore, Maryland on May 7, 2019 and is currently being detained by Defendants-Respondents and held in immigration detention at the Alexandra Staging Facility in Louisiana, located at 96 George Thompson Road, Alexandria, LA 71303.  He is in danger of imminent removal from the U.S., and is scheduled to be deported on June 14, 2019.

12.      Defendant-Respondent Kevin McAleenan is the Acting Secretary of Homeland Security, the department of the federal government responsible for the enforcement of immigration laws.  Secretary McAleenan is the ultimate legal custodian of Mr. Sanchez.  He is sued in his official capacity.

13.      Defendant-Respondent Matthew Albence is the Acting Director for ICE, the

department of DHS responsible for apprehending, detaining, and removing Mr. Sanchez Hernandez.  Director Morgan is a legal custodian of Mr. Sanchez.  He is sued in his official capacity.

14.    Defendant-Respondent Dianne Witte is the Field Office Director for the ICE-ERO Maryland Field Office.  She is a legal custodian of Mr. Sanchez.  She is sued in her official capacity.

## LEGAL BACKGROUND

15.    The noncitizen spouses of U.S. citizens are eligible to become lawful permanent residents of the United States despite previously having been ordered removed, but to do so, they need to leave the country in order to apply for an immigrant visa at a U.S. consulate abroad—a procedure known as consular processing.

16.    Departure from the United States can trigger several grounds of inadmissibility. 8 U.S.C. 1182(a).  One of the most common applies to anyone who has left the U.S. after spending over a year here without authorization.  8 U.S.C. § 1182(a)(9)(B)(i)(II).  Similarly, anyone who has been ordered removed is deemed "inadmissible."  8 U.S.C. § 1182(a)(9)(A).  Both of these grounds of inadmissibility require that a person who has left the United States remain abroad for ten years prior to returning—unless the ground of inadmissibility is waived.  *See* 8 U.S.C. § 1182(a)(9)(B)(v) (waiver of inadmissibility for unlawful presence if separation from U.S.-citizen or LPR spouse or parent will cause that person extreme hardship); 8 U.S.C. § 1182(a)(9)(A)(iii) (waiver of inadmissibility for prior removal order if applicant obtains consent to reapply for admission).  But the process of applying for a waiver of inadmissibility is unpredictable and can require a wait of months or years, during which time a non-U.S. citizen spouse who has left the country must remain abroad, away from his or her family.

17.     Prior to 2013, the unpredictability of this process and long wait time outside the country deterred many noncitizen spouses from leaving the U.S. to become permanent residents. *See Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, Proposed Rule, 77* Fed. Reg, 19902, 19906 (Apr. 2, 2012) ("many immediate relatives who may qualify for an immigrant visa are reluctant to proceed abroad to seek an immigrant visa"). For those who did depart, the long wait times abroad often caused their U.S.-citizen family members precisely the type of hardship that the waivers were intended to avoid. *Id.*

18.     In 2013, USCIS addressed this problem by promulgating regulations that made it possible for the spouses of U.S. citizens who had been present in the U.S. without authorization to apply for a waiver of inadmissibility for unlawful presence *prior* to leaving the U.S. to consular process.  This application is known as a "stateside" waiver.  In 2016, the agency expanded the stateside waiver process to make it available to noncitizens with final orders of removal. *See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule,* 81 Fed. Reg. 50244, 50245 (July 29, 2016).  Both regulations were promulgated through notice and comment.

19.     The purpose of these amendments to federal regulations was to encourage people who would otherwise be reluctant to pursue lawful status outside the U.S. to do so and to promote family unity during the process. *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule,* 78 Fed. Reg. 536-01 (Jan. 3, 2013); 81 Fed. Reg. at 5024-01 (expansion of waiver program will "reduce[] separation time among family members" and bring about "humanitarian and emotional benefits derived from reduced separation of families").  By permitting noncitizens to obtain waivers in the U.S. prior to departing, the regulations reduced the time that noncitizen spouses would have to spend outside the U.S. and separated from their families from months or years to a few weeks and reduced "the financial and emotional impact on the U.S.

citizen and his or her family due to the [noncitizen] immediate relative's absence from the United States." 77 Fed. Reg. at *19907; see also* 81 Fed. Reg. at 50245-46.  This would "encourage individuals to take affirmative steps" to obtain lawful status that they might not otherwise take, 77 Fed. Reg. at 19902-01, including an estimated 100,000 people who, like the plaintiffs in this case, became eligible for the provisional waiver process only after it was expanded in 2016. 81 Fed. Reg. at 50244.

20.     USCIS's Field Manual states, "As a general rule, any alien who appears for an interview before a USCIS officer in connection with an application or petition seeking benefits under the Act shall *not* be arrested during the course of the interview, even though the alien may be in the United States illegally."  USCIS Field Manual § 15.1(c)(2) (emphasis added).

21.     For noncitizen spouses with an outstanding order of removal, the process to obtain a stateside provisional waiver now has five parts.

22.     First, the U.S.-citizen or Lawful Permanent Resident spouse files a Form I-130, Petition for Alien Relative, which requires establishing that the petitioner and beneficiary have a bona fide relationship.  USCIS may require an appearance at an interview to determine this.

23.     Second, once the I-130 is approved, the noncitizen spouse files a Form I-212, Permission to Reapply for Admission into the United States After Deportation or Removal. As amended in 2016, the regulations governing this waiver state that it can be conditionally approved for a person with a removal order prior to that person's departure from the U.S.  8 C.F.R. § 212.2(j); 2016 Final Rule, 81 Fed. Reg. at 50262.  An I-212 application filed as part of the stateside waiver process is adjudicated by the local USCIS field office, which usually takes several months.

24.     Third, once a Form I-212 is conditionally approved, a noncitizen spouse applies for

a provisional unlawful presence waiver using Form I-601A, Application for Provisional Unlawful Presence Waiver.  8 C.F.R. § 212.7(e)(4)(iv) (establishing eligibility of a person with a removal order who "has already filed and USCIS has already granted... an application for consent to reapply for admission").  This application also takes at least several months to adjudicate.

25.     Fourth, once the noncitizen obtains a provisional unlawful presence waiver, he or she must go abroad to appear for an immigrant visa interview at a U.S. consulate.  8 C.F.R. § 212.7(e)(3)(v).  The departure from the U.S. executes the prior removal order.  8 U.S.C. § 1101(g); 8 C.F.R. § 1241.7.  After the interview, if the Department of State determines no other ground of inadmissibility applies, it may issue an immigrant visa.

26.     Fifth, the noncitizen may travel to the United States with his or her immigrant visa. Upon admission to the United States, the noncitizen becomes a lawful permanent resident.

27.     In sum, these regulations allow an otherwise eligible individual who is the spouse of a U.S. citizen or Lawful Permanent Resident and who lives in the U.S. unlawfully and with a final order of removal to 1) come forward voluntarily; 2) undergo the provisional waiver process; 3) if all the requirements are met and the waivers granted, to depart the country to obtain an immigrant visa once the grounds of inadmissibility that departure will trigger have been waived.

28.     Although the 2016 regulations remain in effect, ICE has adopted a policy and practice of detaining and seeking to remove individuals availing themselves of the provisional waiver process when they appear for the I-130 interview (and potentially thereafter), arresting and deporting them at the very first required appointment in the process that allows non-citizens to seek a waiver of inadmissibility while remaining in the U.S.

## SPECIFIC FACTS

I.     **Plaintiffs-Petitioners Alyse Sanchez and Elmer Onan Sanchez Hernandez**

29.     The Plaintiffs-Petitioners Alyse Sanchez and Elmer Onan Sanchez Hernandez are a married couple, married since August 7, 2013 and have two children together.  Their first son, Aaron, was born on September 16, 2015, and their second son, Matthew, was born on July 27, 2017.  The family resides in Kensington, Maryland, which is in Montgomery County.

30.     Ms. Alyse Sanchez is a U.S. citizen and Mr. Elmer Onan Sanchez Hernandez ("Mr. Sanchez") is a citizen of Honduras.  Mr. Sanchez was ordered removed from the U.S. *in absentia* on September 6, 2005 because he did not receive notice of his hearing.  Ms. Sanchez submitted a petition for alien relative I-130 on behalf of her husband on September 4, 2018, and had an I-130 marriage interview scheduled for May 7, 2019.  Mr. Sanchez was arrested at their marriage interview on May 7, 2019 and has been in Defendant-Respondents' custody since that time.

31.     Mr. Sanchez attempted to have his removal case reopened to prevent his deportation by filing a motion to reopen in immigration court, but the motion was denied on June 3, 2019.  Mr. Sanchez's only path to legal status now is through the provisional waiver process.

32.     Mr. Sanchez owns a home remodeling company called Sanchez Painting and Remodeling LLC, and has no criminal record since entering the country in 2005.  He has consistently worked and paid taxes in the United States.

33.     Mr. and Ms. Sanchez sought to establish Mr. Sanchez's legal status through the filing of an I-130 petition for alien spouse, as the first step in a family based petition.

34.     Mr. and Ms. Sanchez were scheduled for an interview on their I-130 application at the USCIS-Baltimore Field Office, located at 3701 Koppers Street, in Baltimore, Maryland, on May 7, 2019.  The interview notice and USCIS's own guidance and procedures indicated that the interview was solely to confirm the bona fides of the couple's marriage.  Mr. and Ms. Sanchez attended the interview with their attorney and an interpreter on May 7, and at the conclusion of

their interview, the interviewer approved the I-130 petition and sent a formal approval in the mail that was received the following day.

35. After the USCIS officer granted the I-130, he said that his supervisor had to come and authenticate the case so Ms. Sanchez needed to go wait in the waiting room. A few minutes later the attorney and interpreter came out to tell Ms. Sanchez that ICE had detained her husband and they handed her his belongings. Mr. Sanchez was placed in handcuffs and taken away without Ms. Sanchez being able to say goodbye.

36. Even though the couple's I-130 was approved by USCIS before Mr. Sanchez was detained, ICE refused to release Mr. Sanchez, and intends to deport him to Honduras. Mr. Sanchez was detained at the Frederick County Adult Detention Center in Frederick, Maryland after he was arrested and remained in detention there until he was moved a number of times before ultimately being taken to the Alexandria Staging Facility in Alexandria, Louisiana, where he is today.

37. Mr. Sanchez's detention and imminent deportation have caused his wife and children significant harm. Ms. Sanchez was shocked and distraught by her husband's arrest, and broke down in tears. She called her mother to help talk with the immigration lawyer because she was too upset to ask about next steps.

38. Their children ask for Mr. Sanchez every day. The younger son, Matthew, is more clingy and does not want to be left alone. Aaron, the older son, is acting out more and more drastically since Mr. Sanchez has been detained. Aaron constantly asks for his daddy.

39. Ms. Sanchez's mental health is also deteriorating. She does not remember a day being separated from her husband, she feels empty, and not like herself, and feels overwhelmed. A week ago she nearly wrecked her car and took herself to the hospital, where she was held under observation for several hours because of her mental state. The hospital sent her to a mental health

crisis center, and she has since gone back to visit the Rockville Department of Health and Human Services' crisis center for mental health services.

40.     Their children are with Ms. Sanchez's parents in Salisbury, Maryland, until the family can figure out how to survive financially.  Mr. Sanchez was the primary income earner in the family, and they are struggling to pay the bills, and may be facing eviction in July.

41.     Ms. Sanchez's family and work life balance have also been completely disrupted. She now has to bring the couple's two children to her parents' house for a few days at a time in Salisbury, because she has work shifts that take place at late hours or on the weekend.

42.      The Sanchez family has been shut out of the only means left to them to obtain lawful immigration status for Mr. Elmer Onan Sanchez Hernandez without undergoing an indefinite and painful separation, which is precisely what USCIS regulations are intended to avoid. He is currently in detention in Louisiana, under an imminent threat of removal to Honduras, where he fears for his life.

43.     In the related case of *Lin v. Nielsen*, Case No. 8:18-CV-03548-GJH, this Court ordered a preliminary injunction to prevent the removal of Mr. Wanrong Lin after he was arrested and detained under almost identical circumstances.

44.     On November 19, 2019, while Mr. Lin's flight was en route to China, Mr. Lin and his wife, Ms. Dong, through counsel, filed a motion for a temporary restraining order.  On that same day, this Court granted Mr. Lin's and Ms. Dong's request and ordered the Government to return Mr. Lin to the United States.  Mr. Lin was returned to the United States by the Government on or about December 14, 2018.

45.     After his return to the United States, the Government agreed to release Mr. Lin from detention as long as he agreed to come into the ICE field office for six month check ins.

46.     On May 2, 2019, this Court granted Mr. Lin's and Ms. Dong's motion for a

preliminary injunction, enjoining the Government from removing Mr. Lin from the United States

pending further proceedings.

## CAUSES OF ACTION

### FIRST CLAIM
### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT AND APPLICABLE REGULATIONS (8 U.S.C. § 1182)

47.     Plaintiffs-Petitioners repeat and incorporate by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

48.     The INA does not condemn individuals who live in the United States unlawfully

and under final orders of removal to prolonged separation from their U.S. citizen spouses and

children.  Instead, it allows these individuals, if otherwise eligible, to leave the U.S. temporarily

and return as lawful permanent residents—If they are granted waivers of applicable inadmissibility

grounds under 8 U.S.C. § 1182(a).  Specifically, § 1182(a)(9)(A)(iii) allows an individual who

departed under an order of removal to avoid a bar on admission by obtaining the "consent[]" of

the Attorney General.  And § 1182(a)(9)(B)(v) allows an individual who lived in the United States

unlawfully to avoid a similar 3-to-10-year bar by demonstrating that a denial of admission would

cause "extreme hardship" to a U.S. citizen spouse or parent.

49.     These regulations thus allow an otherwise eligible individual who is the spouse (or

parent) of a U.S. citizen—and who lives in the United States unlawfully and with a final order of

removal—to demonstrate the *bona fide* nature of his or her marriage, prove his or her eligibility

for required waivers, depart the country briefly to complete processing of an immigrant visa

application at a U.S. consulate, and then return to the United States to rejoin his or her family

lawfully.

50.     The Defendants-Respondents' use of the I-130 interview and the provisional waiver program to arrest Mr. Sanchez, his continued detention, and his planned deportation violate the INA and applicable regulations.

51.     Through Defendants-Respondents' actions, Mr. and Ms. Sanchez are unable to benefit from the regulations that outline how noncitizens with removal orders may become legal permanent residents through a "stateside" waiver process.

52.     Through Defendants-Respondents' actions, the petition by Ms. Sanchez on behalf of Mr. Sanchez and the approval of that petition is meaningless because the benefit of having her spouse with her during the "stateside" waiver process is frustrated by Defendants-Respondents' actions.

**SECOND CLAIM**
VIOLATION OF THE DUE PROCESS CLAUSE OF
THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

53.     Plaintiffs-Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.     Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws.  Moreover, Mr. Sanchez has a liberty interest in being able to remain in the United States in order to pursue adjudications for relief under the provisional waiver process—which was specifically designed to allow him to take steps towards legalization from within the United States in order to avoid protracted separation from his U.S. citizen spouse and children.

55.     Due process also protects a U.S. citizen's liberty interest in living with his or her spouse in the United States. Ms. Sanchez has a due process interest in her spouse's ability to remain in the United States while seeking lawful permanent residency through the consular

processing/provisional waiver process.

56.     Finally, due process protects Mr. and Ms. Sanchez from being the victims of the bait-and-switch practice that ICE is engaged in out of its Baltimore ERO office.

57.     The arrest, detention, and planned deportation of Mr. Sanchez violates plaintiffs' due process rights.

### THIRD CLAIM
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
(5 U.S.C. § 702, 5 U.S.C. § 706, 5 U.S.C. § 553)

58.     Plaintiffs-Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59.     The APA sets forth rulemaking procedures that agencies must follow before adopting substantive rules.  DHS followed these rulemaking procedures to establish the provisional waiver process for the unlawful presence waiver, and to expand the availability of that waiver to noncitizens living with final orders of removal.

60.     ICE's sudden decision to prohibit some noncitizens with final orders of removal from pursuing the process created by these regulations—a prohibition accomplished in this case by detaining and attempting to remove Mr. Sanchez in the midst of his efforts to legalize his status—improperly alters these substantive rules without notice-and-comment rulemaking and without considering the reliance interests created by the regulations, in violation of the APA.  The Defendants-Respondents' use of the I-130 interview to trap Mr. Sanchez to be detained and deported also violates the APA.

61.     The Defendants-Respondents' arrest, detention, and planned removal of Mr. Sanchez from the U.S. will violate the Administrative Procedure Act's prohibition on agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**FOURTH CLAIM**
VIOLATION OF THE SUSPENSION CLAUSE ARTICLE I § 9 CLAUSE 2 OF THE U.S.
CONSTITUTION

62.     Plaintiffs-Petitioners repeat and incorporate by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

63.     The Defendants-Respondents' detention and removal of Mr. Sanchez without any

opportunity for meaningful judicial review of the unlawfulness of that detention and removal

would violate the Suspension Clause, Article I § 9 Clause 2 of the U.S. Constitution.

64.     The removal of Mr. Sanchez would be the final culmination of the unlawful bait-

and-switch practice that ICE is engaged in out of its Baltimore ERO office.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs-Petitioners respectfully request that the Court:

A.     Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner Mr.

Elmer Onan Sanchez Hernandez;

B.     Issue a temporary restraining order, preliminary, and permanent injunction ordering

the immediate release of Mr. Elmer Onan Sanchez Hernandez or, in the alternative, require the

government to provide him with a prompt bond hearing;

C.     Declare that the Defendants-Respondents' policy or practice of subjecting

noncitizens who undertake the initial step towards consular processing and the  provisional waiver

process to arrest, detention, or removal on the basis of a final order of removal and thereby denying

them the ability to avail themselves of the provisional waiver process is contrary to law;

D.     Declare that the Defendants-Respondents' policy or practice of arresting or

detaining noncitizens who have undertaken the initial step towards consular processing and a

provisional waiver at those persons' I-130 interviews or other interviews, appointments, or check-

ins with USCIS or other governmental agencies is contrary to law;

E.      Temporarily, preliminarily, and permanently enjoin the detention or removal of Mr. Elmer Onan Sanchez Hernandez from the U.S. while he is pursuing legalization by way of the consular processing/provisional waiver process;

F.      Temporarily, preliminarily, and permanently enjoin the Defendants-Respondents from targeting Mr. Elmer Onan Sanchez Hernandez for arrest, detention, or removal because he is pursuing legalization by way of the consular processing/provisional waiver process;

G.      Permanently enjoin Defendants-Respondents from arresting or detaining, solely on the basis of a final order of removal or alleged unlawful presence, those noncitizens who have undertaken the initial step towards consular processing and a provisional waiver at those persons' I-130 interviews or other required interviews, appointments, or check-ins with USCIS or other governmental agencies.

H.      Award attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504, if applicable; and

I.      Grant any further relief that the Court deems just and proper.

Dated: June 13, 2019               Respectfully Submitted,

/s/

Nicholas T. Steiner, Esq. (Bar No. 19670)
David Rocah, Esq. (Bar No. 27315)
**AMERICAN CIVIL LIBERTIES UNION OF**
  **MARYLAND FOUNDATION**
3600 Clipper Mill Road, Suite 350
Baltimore, MD 21211
Telephone: (410) 889-8555
steiner@aclu-md.org
rocah@aclu-md.org

Maria E. Rodriguez, Esq. (Bar No. 24463)

Nathaniel S. Berry, Esq. (Bar No. 29278)
**VENABLE LLP**
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742
merodriguez@venable.com
nsberry@venable.com